**CARL WEISSMAN & SONS, INC., a corporation, Plaintiff,**

v.

**Morton PEPPER and Milford Pepper, Defendants.**

**No. CV–77–43–GF.**

United States District Court, D. Montana, Great Falls Division.

Dec. 13, 1979.

Jack L. Lewis, Jardine, Stephenson, Blewett & Weaver, Great Falls, Mont., for plaintiff.

Gorham Swanberg, Swanberg, Koby, Swanberg & Matteucci, Great Falls, Mont., for defendants.

## FINDINGS OF FACT

### and

## CONCLUSIONS OF LAW

HATFIELD, District Judge.

This matter came on for trial before the court, sitting without a jury on September 5, 1979, and was concluded on September 6, 1979. Gorham Swanberg of the firm Swanberg, Koby, Swanberg & Matteucci appeared as counsel for the defendants, and Jack L. Lewis of the firm Jardine, Stephenson, Blewett & Weaver appeared as counsel for plaintiff. Witnesses testified, exhibits were introduced and briefs were submitted by both sides on various subjects. The court being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

### I.

The plaintiff is a Montana corporation with its principal place of business in Great Falls, Montana; the defendants are citizens and residents of the State of Colorado doing business as Century Enterprises; and the amount of controversy exceeds the sum of $10,000.00, exclusive of interest and costs.

### II.

Prior to July 1, 1976, plaintiff had entered into a contract with the State of Montana by which plaintiff was to crush and flatten a number of automobile bodies at various sites in Eastern Montana and to remove them by mid-August, 1976.

### III.

On or about July 1, 1976, plaintiff and the defendant entered into a written contract

whereby the defendants agreed to buy approximately 45 semi-truckloads of crushed car bodies from the plaintiff. By said contract, defendants were responsible for hauling the crushed car bodies from the sites and paying the cost thereof, with delivery to begin the week of July 5, 1976, and to continue as promptly and expeditiously as possible until completed. The price stated in the contract at which defendants were to pay plaintiff was $25.00 a net ton.

### IV.

Both the plaintiff, Maurice Weissman for Carl Weissman & Sons, Inc., and the defendants, Milford Pepper and his brother, Morton Pepper, for Century Enterprises, have extensive experience in a managerial capacity in the recycling of scrap metal, including the recycling of crushed car bodies.

### V.

At the time plaintiff and defendants entered into their contract, the defendants were aware that the plaintiff was obligated to the State of Montana to have the car bodies crushed, flattened and removed from the sites by mid-August, 1976. Plaintiff completed all crushing and flattening of the car bodies on or about the last week in July, 1976.

### VI.

The contract signed by Morton L. Pepper on July 1, 1976, and transmitted to Carl Weissman & Sons, who accepted and signed it on July 6, 1976, with some amendments, provided for the purchase by Century Enterprises from Carl Weissman & Sons of approximately 45 loads of flattened crushed car bodies as follows: 8 truck loads Forsyth; 6 truck loads Ashland; 7 truck loads Broadus; 8 truck loads Baker, and 15 to 20 truck loads Miles City, all in Montana.

### VII.

The original proposal submitted by Morton L. Pepper on July 1, 1976, stated a "minimum of 44,000 pounds per each load", which Weissman had stricken before returning the contract, inserting in place thereof "full visible capacity." Defendants were able to haul an average of 45,008 pounds per load. Also stricken out by plaintiff was language allowing defendants to terminate the agreement without notice if plaintiff did not ship the material on time. (It should be noted, however, that defendant was obligated to transport the car bodies.)

### VIII.

While there is some dispute about weights, the defendants took possession of 450.085 tons (900,170 lbs.) of car bodies in 20 truck loads from July to September, 1976. Apparently the last truck load by Century was delivered to the shredder on September 23, 1976.

### IX.

Defendants took possession of 20 loads of car bodies for which the defendants paid plaintiff the sum of $10,941.56; the defendants should have paid plaintiff the sum of $11,252.13, that constituting a shortage in payment of $310.56.

### X.

On or about September 17, 1976, the defendants refused to take possession of the remaining car bodies at the agreed $25 per net ton price and offered instead $20 per net ton for the remainder of September with the contract price renegotiated on October 1, 1976, and every 30 days thereafter; plaintiff refused to so agree, and defendants did not take possession of any more car bodies.

### XI.

On or about September 17, 1976, Century Enterprises advised Weissman that the shredder had reduced its price by $5.00 per ton. Defendant then sought to reduce the price he paid to plaintiff stating that under a trade usage in the crushed car body industry, the broker passed on any increases or decreases in the price quoted by the shred-

der to the supplier. Century offered to renegotiate the agreement.

## XII.

The Court finds that the written agreement was for approximately 45 loads. This is reinforced by the memorandum by Maurice Weissman dated July 6, 1976, to Morton Pepper in which he returns the signed agreement as follows: "Also you have 45 truckloads listed and you may want to amend the agreement to read 'all vehicles crushed at locations but estimated. We really think there will be about 1600 vehicles and the State lists them at 1¼ tons each. And lastly—vehicles may contain motors, etc.' "

## XIII.

Plaintiff, Weissman, hauled the remaining 25 loads which defendants were obligated to haul.[1] Accordingly, defendants should have hauled an additional 1,125,200 pounds, or 562.60 tons.[2] Thus defendants owe plaintiff the sum equal to 562.60 times $25, or $14,065.

## XIV.

After the breach of contract by defendants on or about September 17, 1976, Weissman on or about September 20, 1976, notified defendants of Weissman's intention to resell the remaining crushed car bodies. There were 908.23 tons of crushed car bodies remaining at the time defendants sought to have the contract price reduced. Weissman shipped and resold 908.23 tons and received $36,798.90 for the remaining car bodies. Plaintiff also incurred freight expense of $22,141.67, for a net of $14,657.23, or an average net per ton of $16.14.

## XV.

Plaintiff received on resale to other shredders $9,080.36 for the remaining 25 truckloads of tonnage (562.6 × $16.14). The Court finds that $9,080.36 is the amount of plaintiff's set-off in mitigation of damages for defendants' breach of contract. Thus the amount plaintiff is entitled to recover on the contract is equal to $14,065 (the amount defendants would have paid plaintiff had they not breached), minus $9,080.36 (the amount received on resale), or $4,984.64.

## XVI.

The Court finds that Weissman incurred $600 in expenses in his attempts to resell the remaining car bodies.

## XVII.

The Court finds that Weissman suffered vandalism on equipment used to load the crushed cars. The vandalism amounted to the sum of $2200.

## CONCLUSIONS OF LAW

### I.

This Court has jurisdiction over the subject matter of this litigation and over the parties thereto. Plaintiff and defendants are citizens of different states and the matter in controversy exceeds the sum of $10,000. 28 U.S.C. § 1331.

### II.

The contract in dispute here is governed by the provisions of the Uniform Commercial Code as codified in Title 30, Chapters 1 through 9 of the Montana Code Annotated 1978.

### III.

Defendants contend that there exists a trade usage or custom in the crushed car body industry which allows a broker such as the Peppers to pass on increases or decreases in price quoted by the shredder to their suppliers, e. g., Weissman. Perhaps if the express agreement was silent as to price, usage of trade might have filled the gap.

---

1. Weissman actually hauled 43 more loads for a gross weight of 1,816,460 since there were more car bodies than the contract estimated.

2. The court used defendants' average poundage per load for purposes of computing damages.

Otherwise, custom or usage must be reasonably consistent with the contract terms. Section 30–1–205(4) MCA states:

The express terms of an agreement . . or usage of trade shall be construed whenever reasonable as consistent with each other; but when such construction is unreasonable express terms control . . both course of dealing and usage of trade (30–1–205).

Additionally, section 30–1–205(2) MCA states usage of trade must have "such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question."

■ Here, the provision in the written contract setting the price at $25 per net ton is inconsistent with the trade usage or custom defendants insist govern the sale of crushed car bodies. It would seem entirely reasonable that if the custom or usage was as widespread or universal as defendants claim then the contract would have reflected such. Moreover, it is significant that both parties are well-seasoned scrap metal traders and that if the above stated practice was followed with such regularity of the trade so as to justify an expectation that it would be observed, then there would not have been a need to insert the specific price of $25 per ton in the contract in the first place. Finally, it follows from basic contract principles that specifications of quantity and price are intended to be observed by the contracting parties. To negate the express terms of this contract by rewriting the specifications would be unreasonable. See *Southern Concrete Services, Inc. v. Mableton Contractors, Inc.*, 407 F.Supp. 581 (N.D.Ga.1975). Thus, the Court concludes that it would be unreasonable to construe the contract as written by the parties to include the price adjustment practice claimed by defendants and denied by plaintiff. Defendants, in good conscience, are bound by the terms as written in the contract.

### IV.

■ The Court concludes that the contract is further governed by 30–2–207(3) MCA, which states:

. . . Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

Here, in spite of the fact that plaintiff lined out certain language in defendants' proposed contract and which may or may not have amounted to a counteroffer, both parties by their conduct, recognized the contract with its terms of price, quantity and delivery. These terms were recognized until the breach by defendants on or about September 17, 1976.

### V.

■ The Court concludes that the contract's duration was for a limited period of time. Delivery was to begin the week of July 5, 1976, and be completed as promptly and expeditiously as possible. At most the contract was to terminate whenever defendants hauled approximately 45 truckloads of crushed car bodies. More in line with the contemplation of the parties was that the contract was to be completed by August 15, 1976, the date which defendants knew plaintiff's contract with the State of Montana was to be completed. Even the time period between July through September would have been reasonable within which to complete the contract had defendants decided to do so. Thus, when defendants informed plaintiff on September 17, 1976, that they refused to remove the remaining car bodies for the agreed price of $25 per ton the contract was breached. Plaintiff is entitled to damages as a result of the breach.

### VI.

The Court concludes that damages for the breach of contract is governed by §§ 30–2–

703 and 30–2–706 MCA. The remedial policy of the UCC is that the aggrieved party should be "put in as good a position as if the other party had fully performed." See 30–1–106(1) MCA. Section 30–2–703 MCA basically provides that if the buyer breaches the contract, the aggrieved seller may resell and recover damages as provided by § 30–2–706 MCA. The latter section states in part:

> . . . [w]here the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages . . . .

The section also calls for the seller to give the buyer reasonable notification of his intent to resell. Here, plaintiff testified that he notified defendants on or about September 20, 1976, that he would resell the car bodies to other scrap shredders. Over the course of the next several months plaintiff resold the remaining car bodies to other shredders at the prevailing market price. The Court concludes that plaintiff was not required to resell to defendants and that the resale was accomplished in a commercially reasonable manner and in good faith. Thus, plaintiff is entitled to recover the difference between the resale price and the contract price. This sum was shown to be $4,984.64.

### VII.

Plaintiff is entitled to recover any expenses reasonably incurred as a result of defendants' breach. See § 30–2–710 MCA. Thus, plaintiff is entitled to recover the $600 expense in arranging for the resale to other crushed car body purchasers.

### VIII.

Plaintiff is entitled to recover $310.56 as and for the shortage of payment made by defendants for car bodies actually hauled.

### IX.

The Court concludes that the vandalism damage incurred by plaintiff is not recoverable from the defendants. The vandalism was unforeseeable by either party and did not proximately result from the breach of the contract. The vandalism to plaintiff's equipment cannot be labeled either incidental or consequential damage. The damage did not stem from circumstances which were reasonably contemplated by the breaching party at the time the agreement was made.

### X.

Plaintiff is entitled to judgment against the defendants in the total amount of $5,895.20 together with interest thereon at ten percent (10%) per annum from the date hereof until paid. Plaintiff is also entitled to recover costs.

LET judgment be entered accordingly in favor of the plaintiff and against defendants.